UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- :
SIRIUSPOINT LTD.,                                    :
                                                     :
             Plaintiff,                              :    **COMPLAINT**
                                                     :
                                                     :    Civil Case No.: 1:22-cv-7955
                                                     :
                                                     :
             -against-                               :
                                                     :
JEFFREY W. DAVIS,                                    :
                                                     :
             Defendant.                              :
---------------------------------------------------- :

Plaintiff SiriusPoint Ltd. ("Plaintiff" or "Sirius"), by and through its undersigned attorneys, Sheppard Mullin Richter & Hampton, LLP, as and for its Complaint against Defendant Jeffrey W. Davis ("Defendant"), alleges as follows:

**INTRODUCTION**

1.  Sirius brings this Complaint against Defendant for breach of contract arising out of Defendant's refusal to repay the second installment of a retention bonus that he was contractually obligated to repay after Defendant voluntarily resigned from his employment with Sirius within weeks after the bonus was paid.

2.  Pursuant to a Special Cash Retention Award letter agreement between Sirius and Defendant, entered into as of December 5, 2019 (the "Retention Award Agreement"), Sirius paid Defendant, in March 2020, the first installment of a retention award in the amount of $400,000, less applicable deductions (the "First Installment Retention Award"), and in March 2021, the second installment of the retention award in the amount of $400,000, less applicable deductions

-1-

(the "Second Installment Retention Award").

3. On July 19, 2021, Defendant voluntarily resigned from his employment with Sirius without Good Reason (defined below).

4. Upon Defendant's voluntary resignation without Good Reason, he was contractually obligated to repay the Second Installment Retention Award.

5. On July 23, 2021, Sirius sent Defendant a letter outlining, among other things, Defendant's obligation to repay the Second Installment Retention Award.

6. As of the date of the filing of this Complaint, Defendant has failed to repay any portion of the Second Installment Retention Award.

7. As a result, Sirius has been damaged and forced to commence this action because of Defendant's breach of the Retention Award Agreement by failing to repay the Second Installment Retention Award within thirty (30) days of his last day of employment, plus interest from the date of Sirius's demand and Defendant's refusal to repay it.

## THE PARTIES

8. Sirius is a corporation organized under the laws of Bermuda with its principal place of business located in Bermuda. Sirius also maintains offices in New York, New York.

9. Sirius is the successor in interest to Sirius International Insurance Group, Ltd.

10. From 2016 through July 19, 2021, Defendant served as Sirius International Insurance Group, Ltd.'s Executive Vice President, Chief Risk Officer and Chief Actuary. On information and belief, Defendant is a resident of Florida.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§ 1332(a)(2) and 1332(c)(1) because the amount in controversy exceeds $75,000 and the action is between Plaintiff, a citizen or subject of a foreign state, and Defendant, a citizen of the State of Florida.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. Defendant is subject to this Court's personal jurisdiction because this action arises from Defendant's provision of employment services and transaction of business with Plaintiff in New York, New York.

## RELEVANT FACTS

**A.** **Defendant's Retention Award Agreement with Sirius**

13. Pursuant to Defendant's Retention Award Agreement, agreed to as of December 5, 2019, Plaintiff agreed to pay Defendant a retention award in the total amount of $800,000, to be paid in two equal installments as follows: 50% paid on or prior to March 15, 2020, and 50% paid on or prior to March 15, 2021, each date defined as a "Vesting Date."

14. Also pursuant to the Retention Award Agreement, Defendant agreed to a forfeiture provision that required Defendant to repay one or both installments of the retention award, in certain circumstances:

> **Forfeiture and Clawback.** If your employment is terminated for any reason other than a termination by your Sirius Employer without Cause or a resignation for Good Reason, you will forfeit any unvested portion of the Retention Award. In addition, if such termination occurs within 12 months after one of the Vesting Dates, the payment amount (being the amount of the Retention Award less any withholding and deductions made at the time of the payment of the Retention Award to you) relating to that Vesting Date will be forfeited and you will be required to repay such

payment amount to your Sirius Employer within 30 days after the date of your termination. …

B. **Sirius Paid Defendant the First and Second Installments of the Retention Award**

15. On March 15, 2020, Sirius paid Defendant the First Installment Retention Award in the amount of $400,000, less applicable withholdings and deductions.

16. On March 15, 2021, Sirius paid Defendant the Second Installment Retention Award in the amount of $400,000, less applicable withholdings and deductions.

C. **Defendant Voluntarily Resigned Without Good Reason**

17. On April 22, 2021, only five weeks after Sirius paid Defendant his Second Installment Retention Award, Defendant sent Sirius a written notice claiming the occurrence of a Good Reason condition that, if not cured, would provide Defendant with Good Reason to resign from his employment ("April 22, 2021 Notice").

18. "Good Reason" is defined as:

> the Participant has complied with the Good Reason Process (as defined below) following the occurrence of any of the following conditions (without Participant's written consent or waiver): (i) a material diminution in the Participant's responsibilities, authority or duties, unless such diminution is in connection with a Cause event; (ii) a diminution in the Participant's Annual Base Salary or target annual bonus opportunity; (iii) during the 24-month period following a Change in Control, a material diminution in the regular target annual long term incentive opportunity or the annual target long term incentive award subsequently granted to the Participant in an amount less than the regular target opportunity, but in all cases disregarding the equity awards granted in connection with the Company's going-public transaction in 2018 and other special cash or equity award; (iv) a material change in the geographic location at which the Participant provides services to the Company; or (v) a material breach of any employment or other material agreement between the Company or one of its Affiliates and the Participant. For purposes of this Agreement, "Good Reason Process" shall mean that (i) the Participant reasonably determines in good faith that a Good Reason condition has occurred; (ii) the participant notifies the Company in writing of the occurrence of the Good Reason condition within 60 days of the Participant having actual or

constructive knowledge of the occurrence of such condition; (iii) the Participant cooperates in good faith with the Company's efforts, for a period not less than 30 days following such notice (the "Cure Period"), to remedy the condition; (iv) notwithstanding such efforts, the Good Reason condition continues to exist; and (v) the Participant terminates Participant's Employment at least 10 days, but not more than 60 days, after the end of the Cure Period.  For the avoidance of doubt, if the Company cures the Good Reason condition during the Cure Period, Good Reason shall be deemed not to have occurred.

19.   Contrary to Defendant's assertion in the April 22, 2021 Notice, Defendant did not have a basis to invoke the Good Reason Process and resign from his employment for a Good Reason.

20.   For that reason, when Defendant resigned from Sirius on July 19, 2021, effective immediately, he voluntarily resigned from his employment and did not resign for Good Reason.

21.   On July 21, 2021, Sirius sent Defendant a letter stating, among other things, that Defendant's voluntary resignation was not with Good Reason.

22.   As a result of Defendant's voluntary resignation without Good Reason within 12 months from the Vesting Date of the Second Installment Retention Award, Defendant is obligated under the Retention Award Agreement to repay to Sirius the Second Installment Retention Award.  As that Agreement states, "if such termination occurs within 12 months after one of the Vesting Dates, the payment amount … relating to that Vesting Date will be forfeited and you will be required to repay such payment amount…"

23.   On July 23, 2021, Sirius sent Defendant a letter demanding the return of the Second Installment Retention Award.

24.   As of the date of the filing of this Complaint, Defendant has failed to repay Sirius any portion of the Second Installment Retention Award.

25.   Due to Defendant's failure to repay Sirius the Second Installment Retention

Award, Sirius has been damaged in the amount of $400,000, less withholding and deductions made at the time of the payment of the Second Installment Retention Award, plus interest from the date of Sirius's demand and Defendant's refusal to repay it.

## FIRST CLAIM FOR RELIEF FOR
## BREACH OF CONTRACT

26. Sirius repeats and realleges each of the preceding paragraphs as though fully set forth herein.

27. Sirius and Defendant entered into the Retention Award Agreement. Pursuant to that Agreement, Sirius paid Defendant a Retention Award in the total amount of $800,000 in two installments.

28. Defendant voluntarily resigned without Good Reason within twelve months following Sirius' payment of the Second Installment Retention Award.

29. Pursuant to the Retention Award Agreement, Defendant is obligated to repay to Sirius the Second Installment Retention Award.

30. Defendant has failed to comply with his obligations under the Retention Award Agreement by repaying the Second Installment Retention Award even though Defendant is contractually obligated to repay it.

31. Defendant is, therefore, in breach of his Retention Award Agreement and must immediately repay the Second Installment Retention Award in the amount of $400,000, less withholding and deductions made at the time of the payment of the Second Installment Retention Award.

32. Sirius has been damaged by Defendant's breach of his Retention Award Agreement in an amount not less than $400,000, less withholding and deductions made at

the time of the payment of the Second Installment Retention Award.

**WHEREFORE,** Sirius respectfully requests that this Court enter an order and judgment directing the following relief:

A.  Payment in favor of Sirius from Defendant in the amount of $400,000, less withholding and deductions made at the time of the payment of the Second Installment Retention Award, plus interest that accrues on that amount; and

B.  Such other and further relief as this Court deems just and proper.

Dated:  September 16, 2022

Respectfully submitted,

  /s/ Kevin J. Smith
John E. Kiley
Kevin J. Smith
SHEPPARD, MULLIN, RICHTER &
  HAMPTON, LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.:  (212) 653-8700
Fax:  (212) 653-8701
jkiley@sheppardmullin.com
kjsmith@sheppardmullin.com

Robert J. Guite (*pro hac vice* application pending)
SHEPPARD, MULLIN, RICHTER &
  HAMPTON, LLP
Four Embarcadero Center, Seventeenth Floor
San Francisco, CA 94111
Tel.:   (415) 774-3176
Fax:   (415) 403-6014
rguite@sheppardmullin.com

*Attorneys for Plaintiff SiriusPoint Ltd.*